UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BHUPINDER SINGH,

    Petitioner,

    v.                                        CAUSE NO. 3:25cv962 DRL-SJF

BRIAN ENGLISH, SAMUEL OLSON,
and KRISTI NOEM,

    Respondents.

OPINION AND ORDER

Petitioner Bhupinder Singh, an Indian citizen, is being detained at Miami Correctional Facility under United States Immigration and Customs Enforcement (ICE) authority. He petitioned for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is being detained in violation of the laws and Constitution of the United States.

At issue is the government's authority to detain a noncitizen while his removal proceedings pend—an issue concerning 8 U.S.C. §§ 1225(b)(2) and 1226(a) that the court has thoroughly explored, *see De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219, 2-5 (N.D. Ind. Nov. 25, 2025) (Leichty, J.); *Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419, 1 (N.D. Ind. Dec. 16, 2025) (Brisco, J.), and that the court of appeals has addressed by way of preliminary views, *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, __ F.4th __, 2025 WL 3552514, 8-10 (7th Cir. Dec. 11, 2025) (preliminary ruling on application for stay that government was not likely to succeed on merits of its argument that mandatory detention provision § 1225(b)(2) applies). These rulings to date have been materially consistent.

The court directed the governmental parties identified as respondents (all representatives of the federal government save for the Miami Correctional Facility's Warden) to show cause why a writ of habeas corpus should not be granted. Though the proper respondent in this habeas claim may be the immediate custodian, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), the federal government filed a collective response. Mr. Singh filed a traverse. Today, the court grants the petition for a § 2241 writ.

Mr. Singh is a citizen and native of India, who arrived in the United States on January 28, 1993 at the John F. Kennedy International Airport in New York, New York. He was placed in exclusion proceedings with the New York immigration court and was granted an authorized period of stay and work authorization through the Family Unity Program, which was valid for one year. He did not appear for his exclusion hearing and was ordered excluded *in absentia* in May 1993.

Mr. Singh eventually moved to Wisconsin, where he lived with his wife and two children (both United States citizens). In August 2025, Mr. Singh was detained by ICE in Wisconsin following a traffic stop during which a law enforcement officer checked his immigration status and learned he had an outstanding exclusion order. In September 2025, Mr. Singh filed a motion to reopen the exclusion proceedings. His motion was granted; and, as of October 8, 2025, the exclusion order has been canceled. He was transferred to Miami Correctional Facility around October 15, 2025, and his hearing with the immigration court in Indianapolis was scheduled for December 1, 2025.

Mr. Singh says he has not been given the opportunity to seek bond, and he argues that his continued detention once his exclusion order was canceled is unlawful. The

government (speaking for all respondents) first contends that the court lacks jurisdiction to hear this petition, and alternatively that Mr. Singh has been properly detained as an "applicant for admission" under 8 U.S.C. § 1225(b)(2), without the possibility of bond. The court addresses these in order, though given the road that has been traveled on these subjects already it will be briefer on the older points than before.

The court has an independent duty to ensure that subject matter jurisdiction exists in every case. *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). The government says the court lacks jurisdiction over the petition by virtue of 8 U.S.C. § 1252(e)(3)(A)(ii), § 1252(g), and § 1252(b)(9). The government gives the court no cogent reason to deviate from its prior perspective on these issues in *Aguilar*, now joined in chorus last week by Judge Brisco's thoughtful decision. The court has jurisdiction.

The court thus begins where the parties seem to agree. Mr. Singh qualifies as an "applicant for admission"—a statutorily defined term of art: an "alien present in the United States who has not been admitted" or an alien "who arrives in the United States (whether or not at a designated port of arrival . . .)[.]" 8 U.S.C. § 1225(a)(1). He is present in the United States and has not been admitted. About this there is no debate.

But, just as in *Aguilar*, this only answers part of the question. Section § 1225(b)(2) says, in the case of an applicant for admission, "if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). If Congress wanted this new phrase to be synonymous to an "applicant for admission," it could have said so by simply repeating the defined term of art, "applicant for admission." If Congress wanted this

3

new phrase to reference back to the same "applicant for admission" one-for-one, it could easily have done so too.

But it didn't. Congress instead chose new words, without a definite article or determiner, and nothing close to just generic words either, in such a way as to reveal that "alien seeking admission" refines those "applicants for admission" to which this subsection applies. *See Aguilar*, 2025 WL 3280219 at 7. After all, the law typically presumes that differences in language have differences in meaning, not least when Congress utilizes these different phrases within the same statutory subsection. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018). Therefore, § 1225(b)(2) doesn't apply to all "applicants for admission," rather only to those "applicants for admission" who are "an alien seeking admission" and who are "not clearly and beyond a doubt entitled to be admitted"—just as the statute reads. 8 U.S.C. § 1225(b)(2); *see also Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (court must apply statute's plain meaning). The court cannot rewrite this subsection to strike "seeking admission" any more than it can ignore the language or render it meaningless. *See Corley v. United States*, 556 U.S. 303, 314 (2009).

The government nonetheless presses a new theory today—that "applicant for admission" is used in the statute as one particular way of "seeking admission." By its thinking, an "applicant for admission" is necessarily "seeking admission" under § 1225(b)(2). Though the court appreciates the dialogue, the government offers this view without convincingly wrestling with the statute's plain language, much less the surplusage canon or meaningful-variation canon, which, though not gospel, compellingly work against the government. *See supra*; *Aguilar*, 2025 WL 3280219 at 6-7. Instead, the government bases

4

its view on how "seeking admission" is used in other parts of § 1225. The court has no problem with this reference as another interpretative point, for the law presumes a word or phrase will have "the same meaning in all subsections of the same statute." *Morrison-Knudsen Const. Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 461 U.S. 624, 633 (1983). But in the end the government makes too much of it.

To explain, the government points to § 1225(a)(3), which says all aliens "who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). In part responding to *Aguilar*, the government offers a new twist. In *Aguilar*, the government argued that "applicant for admission" and "alien seeking admission" were in effect *synonymous*—that, in its words, an alien seeking admission was "simply another way of referring to aliens who are applicants for admission."[1] Perhaps because that view could not hold up, the government no longer calls the terms synonymous in responding to this latest petition. Instead, the government argues now that the word "otherwise" denotes that "seeking admission" is the *broader* phrase and that "applicant for admission," as the *narrower* concept, is merely one way an alien sets about seeking admission. The shifting sands of the government's variable interpretations weakens its position, and the statute's plain language finishes the job.

---

[1] Elsewhere, in *Aguilar*, the government echoed in briefing that "those who are 'applicants for admission' are themselves aliens 'seeking admission' [with the] understanding [that] Congress felt free to use the latter phrase as a synonym for the former in section 1225(b)(2)."

Rightfully, the government explains that "otherwise" at times has been interpreted in other statutes to indicate that a "catchall" phrase follows, and it can in certain contexts. After all, words are known by the company they keep—a simpler way of saying *noscitur a sociis*. *See United States v. Williams*, 553 U.S. 285, 294 (2008). The government says "otherwise" means "in a different way or manner," *see Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 535 (2015), the same definition that the court gave the term in *Aguilar*. But the government takes it a step further to argue that, through this definition, "otherwise" means that the second phrase ("seeking admission") necessarily subsumes the first phrase ("applicant for admission"). The court agrees that "otherwise" semantically links the phrases that appear in § 1225(a)(3) before and after this word, but not as the government views it. *See Begay v. United States*, 553 U.S. 137, 151 (2007) (Scalia, J., concurring in the judgment), *overruled on other grounds*, *Sessions v. Dimaya*, 584 U.S. 148 (2008).

The government cites cases that reach its preferred conclusion, but the rather notable difference is that these cases largely seem to concern statutes that have a list of specific acts that are then followed by a general catchall phrase introduced by "otherwise," not simply something stated partially in the disjunctive. To borrow an example, the cases materially follow this similar format: "dogs, cats, horses, cattle, [or] other animals." A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). Thus, the government offers an *ejusdem generis* spin on § 1225(a)(3) with the hope to bring that spin to § 1225(b)(2)—that the general catchall phrase that follows a list of specifics in a statute both encompasses those specifics and must be interpreted in line with those specifics. The problem is that, as an interpretative doctrine, *ejusdem generis* applies only to specific enumerations—a list of two

6

or more specific examples—that then end in a generic and often broad or linear catchall term. *See, e.g., Circuit City Stores v. Adams*, 532 U.S. 105, 114-15 (2001); *Overdevest Nurseries, L.P. v. Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021).

That isn't this statute, either one. Neither in § 1225(b)(2) nor in § 1225(a)(3) is there any list from which to interpret, respectively, "alien seeking admission" or "otherwise seeking admission" as always and necessarily subsuming what comes before it—namely, "applicant for admission." Quite to the contrary, such an interpretation spoils rather than enforces the plain language of § 1225(b)(2), and for several reasons it would seem. First, the use of "otherwise" in § 1225(a)(3) demonstrates that Congress understood "seeking admission" to be a different way to require inspection by immigration officers, a way that could be different from being an applicant for admission. That perhaps is the most that needs to be said. The court must be careful not to carry over the meaning of "otherwise" to § 1225(b)(2), for § 1225(b)(2) never uses the word "otherwise" like § 1225(a)(3) does.

That said, even § 1225(a)(3) has no such list of two or more specific enumerations, only one term. This subsection shifts from one subject (an "applicant for admission") to one verb ("otherwise seeking admission"), meaning it applies to an unadmitted alien present in the United States or an alien who, in a different way, is *seeking* admission into (or readmission to or transit through) the country. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008) (rejecting petitioner's reliance on *ejusdem generis* to interpret the phrase "any officer of customs or excise or any other law enforcement officer" because the "phrase is disjunctive, with one specific and one general category, not . . . a list of specific items separated by commas and followed by a general or collective term"); *see also United States v.*

7

*Wilson*, 503 U.S. 329, 333 (1992) ("use of verb tense is significant in construing statutes"). Even as the word "otherwise" ties the two phrases together, the latter phrase, introduced and separated by this word "otherwise," refines the subsection's scope rather than just encompasses the former noun. *See Inclusive Cmtys.*, 576 U.S. at 535 (the word "otherwise" in a statute "signal[ed] a shift in emphasis" from an actor's state of mind to the consequences of his actions); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019) (holding that "otherwise" in another statutory scheme both served as a catchall and "stitched" provisions together "by limiting the reach of the statutory protection").

Second, the court can envision a number of "applicants for admission"—those who would seem to meet this term of art, as Congress expressly defined it, by being present in the United States as an unadmitted alien or by being an alien arriving in the United States—without ever being able to say these individuals, in any real sense of the words, are "seeking admission." *See* 8 U.S.C. § 1101(a)(13)(A) (INA defining "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"); *Aguilar*, 2025 WL 3280219 at 8 (defining "seeking," "entry," and "into"). A smuggler who surreptitiously evades all ports of entry and border-crosses via a tunnel under a wall, with plans to return to Mexico or Canada, would qualify as an "applicant for admission" once caught and present in the United States, though he never seeks or intends to seek admission and instead only seeks to evade and return. A victim who has been brought to this country against her will, say tragically by human traffickers, and found in the interior could be said to be present in the United States without having been admitted; in no sensible way could someone say her involuntary presence alone meant

that she was then "seeking admission." Suppose someone is present in the United States as an unadmitted alien who voluntarily consents to removal, or suppose a parolee inside the United States awaits removal; these individuals could be said to be "applicants for admission" though they are not in truth "seeking admission." Or consider the example of a foreign national who has been apprehended in international waters for trafficking illegal narcotics and brought involuntarily into the United States; such a person might meet the plain definition of "applicant for admission," though he would not be deemed to be "seeking admission." *See* 8 U.S.C. § 1225(a)(1) ("applicant for admission" includes an alien brought to the country after being interdicted in international waters); *see, e.g., In Re Navarro-Fierro*, 2004 WL 1167275, 3 (BIA Jan. 16, 2004) (nonprecedential opinion).

With all humility, not every one of these examples has been briefed or argued in this emergent setting, and the Immigration and Nationality Act (INA) isn't less than complicated. There may be special procedures that apply. But to adopt the government's new view, all "applicants for admission" would also need to be "seeking admission," and that just doesn't seem always to be the case. The inverse seems just as true—that there are ways to be "seeking admission" (lawful entry into the United States) other than being an "applicant for admission." *See, e.g.,* 8 U.S.C. § 1101(a)(13)(C) (describing the conditions when a lawful permanent resident is "regarded as seeking an admission into the United States"). The two concepts in § 1225(b)(2) work more like a Venn diagram than how the government proposes it, either in *Aguilar* or anew here. The use of the phrase "seeking admission" in § 1225(b)(2) brings the scope of this subsection more sharply into focus rather than merely

9

allows the subsection to cling solely to the definition of "applicant for admission" to guide its application.

Third, the government reaches its new view only by eroding rather than maintaining the term of art that is "applicant for admission." The court critiqued this in *Aguilar* already but recalls the problem forcefully again today. This time, the government compares the words "applying" and "seeking" to contend that one may "seek" something without "applying" for it, but one "applying" for something is necessarily "seeking" it. The government concludes that "an alien who is 'applying' for admission to the United States (*i.e.*, an 'applicant for admission') is 'seeking admission' to the United States." But the entire premise of this is in error. The court cannot break apart "applicant for admission" and recharacterize it as someone who is merely "applying" for admission to the United States because "applicant for admission" is a term of art that Congress has defined differently. *See Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning.") (quotations altered and citation omitted).

Put another way, it matters little what "applicant" normally means, or even in this particular phrase what "admission" might mean. The word "applicant" might strike at times as a misnomer. But no matter, because "applicant for admission" means, and only means, what Congress says it means. And Congress defined it in status terms—the status of being present in the United States without having been admitted (or as an arriving alien). In some contrast, the phrase "seeking admission" describes, not merely one's status, but the

10

activity of one trying to gain admission—that is, lawful entry into the United States. *See Aguilar*, 2025 WL 3280219 at 8. This adds focus to § 1225(b)(2).

Fourth, and to return to § 1225(a)(3) for one last moment, the government's position overlooks that the word "seeking" there carries more water than merely someone who seeks admission. It also applies to those who are "otherwise seeking" readmission to the United States, or who are "otherwise seeking" transit through the United States. 8 U.S.C. § 1225(a)(3). The government never explains why its interpretation of "otherwise seeking" in § 1225(a)(3), which it then wants to fold into § 1225(b)(2), can hold in light of these other scenarios in § 1225(a)(3).

In short, under § 1225(b)(2), an alien must be an "applicant for admission," and the alien must be "seeking admission," and an examining immigration officer must determine that this alien "is not clearly and beyond a doubt entitled to be admitted" for mandatory detention to occur under this subsection. 8 U.S.C. § 1225(b)(2). A contrary pitch from the government, either the one in *Aguilar* or the new one here, isn't persuasive.

Mr. Singh's current detention is not authorized by § 1225(b)(2). The question is what relief is appropriate. There is no contention that his initial detention based on a then-valid exclusion order was improper. *See* 8 U.S.C. § 1231(a). Once the exclusion order no longer was in force, another statutory basis must have existed to detain him. Two other statutes govern the detention of a noncitizen while removal proceedings pend. *See* 8 U.S.C. §§ 1226, 1357. But the government hasn't argued either statute as a basis for detaining Mr. Singh, or offered a warrant to trigger the first, or (much like *Aguilar*) argued why it should be allowed to proceed under the second. The court can't and won't make arguments for the

government. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020). The sole basis for his detention, § 1225(b)(2), having been found wanting on this record, the court has no choice but to find his detention unlawful and to order his immediate release.

Accordingly, the court GRANTS IN PART the petition for a writ of habeas corpus, ORDERS the Warden of the Miami Correctional Facility (as the custodian and proper respondent) to release Bhupinder Singh immediately from custody and to certify compliance with this order by a filing a notice with the court by **December 24, 2025**, and DIRECTS the clerk to email forthwith today a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release (as other respondents will receive notice of this order through the electronic docket). Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

December 23, 2025                                  *s/ Damon R. Leichty*
                                                   Judge, United States District Court